UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
BILLION TOWER INT'L, LLC,

                        Plaintiff,

        -against-

MDCT CORPORATION,

                        Defendant.
------------------------------------------------------------------------X

RECEIVED MAY 1 4 2008 USDC-WP-SDNY

**AMENDED COMPLAINT**

Case Number: 08-CIV-4185

JURY DEMANDED

       Plaintiff Billion Tower Int'l, LLC, ("Billion Tower"), by its attorneys Cuddy & Feder LLP, as and for its Complaint against Defendant MDCT Corporation (the "Defendant") (Billion Tower and Defendant collectively referred to as the "Parties"), respectfully alleges as follows:

## NATURE OF THE ACTION

       1.    This action for declaratory judgment, breach of contract, and fraud arises out of a contract between Billion Tower and Defendant pursuant to which Defendant agreed to produce and deliver articles of clothing for and to Billion Tower for branding and subsequent resale to Billion Tower's retail customers.

       2.    As explained in detail below, Billion Tower contracted with Defendant solely on the basis of Defendant's representations regarding its ability to timely produce said articles of clothing in its factory in Vietnam. Notwithstanding the foregoing, Defendant continually postponed production, during such delays even pulling a bait-and-switch on Billion Tower by moving its production capability to China in direct contravention of the Parties' agreement, which was based upon Billion Tower's express desire to avoid production in China due to preexisting relationships Billion Tower had with other Chinese factories working on other projects.

C&F: 912324.3

3. As a result of Defendant's material misrepresentations, which fraudulently induced Billion Tower to enter into the contract in the first instance, Defendant has defrauded and materially breached its agreement with Billion Tower, thereby relieving Billion Tower of any obligations pursuant to said contract and subjecting Defendant to liability for any and all damages, including foreseeable lost profits reasonably contemplated by the Parties, suffered by Billion Tower as a direct and proximate result of Defendant's wrongful conduct.

## THE PARTIES

4. Billion Tower is a limited liability company duly organized and existing pursuant to the laws of the State of New Jersey, having its principal place of business located at 989 Avenue Of The Americas, New York, New York 10018. Billion Tower's only member (also its managing member) is Cho Shun "Joeson" Ko, a citizen of Hong Kong, China who is domiciled, and resides, in the State of New York at 214-37, 32nd Road, Bayside, New York 11361.

5. Upon information and belief, Defendant is a corporation duly organized and existing pursuant to the laws of the State of California, having its principal place of business located at 17890 Castleton Street, No. 230, City of Industry, California 91748.

## JURISDICTION

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that this is a civil action wherein the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

7. Venus is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claims herein occurred in this judicial

district in light of Billion Tower's dealings with Defendant from its principal place of business in New York, New York.

## CASE AND CONTROVERSY

8. Billion Tower repeats and realleges each and every allegation set forth above as if set forth verbatim herein.

9. In or around September 2007, Billion Tower and Defendant commenced discussions regarding Defendant's production and delivery of various articles of clothing on behalf of Billion Tower. Billion Tower continued discussions regarding same based solely upon Defendant's representations that it could produce and deliver said articles of clothing at a price, and in a timeframe, agreeable to Billion Tower.

10. Billion Tower explained to Defendant its need for on-time performance with respect to both production and delivery given that late and/or incomplete shipments by Billion Tower to its own customers would result in charge-backs related to the merchandise by said customers to Billion Tower.

11. Billion Tower further explained to Defendant that the location of Defendant's foreign factories was eminently important as Billion Tower had preexisting relationships with various producers in China and therefore desired that the production of the clothing discussed with Defendant occur in a different location.

12. In fact, on or about September 28, 2007, Andrew Kha, representing Defendant, met with Billion Tower representatives at Billion Tower's New York City office to view the products that were to be the subject of the transaction and to provide information concerning Defendant's production capabilities in Vietnam.

13. Andrew Kha specified to Billion Tower that his partner owned his own fabric mill and provided Billion Tower with information about its Vietnam factory where the production would take place.

14. At that time, Billion Tower's representative specified that as a vital component of the transaction the goods must be delivered on time.

15. Andrew Kha verbally assured Billion Tower that the goods would be delivered on time and that the goods would be produced in Vietnam.

16. These representations were a material inducement to Billion Tower to enter into the transaction, as it was vital for Billion Tower to deliver the goods on schedule in order to avoid charge-backs and to ensure that Billion Tower's retail customers would not reject the goods as untimely.

17. It was also material to Billion Tower that Defendant ensure that the goods would be manufactured in Vietnam, as opposed to China where Billion Tower regularly manufactures, because Billion Tower had existing relationships with Chinese manufacturers and Billion Tower would not have entered into a manufacturing agreement with another entity in China in light of those existing relationships.

18. It was in direct reliance on these material inducements that Billion Tower decided to enter into the transaction.

19. On or about September 28, 2007, Billion Tower contracted with Defendant to manufacture 115,654 units of the articles of clothing at issue at a cost of $651,085.82.

20. Shortly thereafter, the Parties further agreed that Defendant would deliver to Billion Tower certain pre-production samples of the articles of clothing by no later than

November 2, 2007. In an ominous sign of things to come, Defendant failed to deliver said pre-production samples to Billion Tower by the agreed upon date.

21. In light of the foregoing, during the evening of November 2, 2007, Billion Tower contacted Defendant to inquire about the status of the pre-production samples as well as the overall status of the project and Defendant's preparations for manufacturing of the products at its Vietnam factory. Billion Tower stated that its representatives intended to visit the Vietnam factory during the week of November 12, 2007 and desired to meet with Defendant's representatives to discuss the project and the production schedule.

22. By email dated November 5, 2007, Defendant responded to Billion Tower's inquiry by asserting that delays had forced Defendant to move the production to a factory in China. Therein, Defendant stated as follows:

> ...timing is getting very tight, and there are many styles in the middle of revision[s]/changes, we have decided to move this program to the factory in China...

23. Thus, Defendant's response confirmed that as of November 5, 2007, *i.e.*, nearly two (2) months after Billion Tower had placed its order on a time of the essence basis, and after Defendant had already failed to produce certain pre-production samples by the agreed-upon date, Defendant had still not even commenced any production efforts whatsoever. Moreover, in direct contravention of the Parties' agreement, Defendant now attempted to shift production from Vietnam to China, notwithstanding the fact that Billion Tower had explicitly entered into this agreement with Defendant based upon its representation that all factory production would occur in Vietnam.

24. On November 7, 2007, Defendant again communicated by email to Billion Tower apologizing for the delay in production. Therein, Defendant stated as follows:

> We have been communicating with our factory in China. They are still compiling the information with us. I understand that all parties are under pressure due to this delay. Again, I apologize for this delay.

25. After suffering through Defendant's delays and excuses for another approximately six (6) weeks, Billion Tower again contacted Defendant by email on December 18, 2007 requesting another update on the status of Defendant's production schedule and again reiterating that Billion Tower was beholden to its own customers and that if all orders were not shipped and delivered by Defendant on time, in full, Billion Tower would be subjected to charge-backs by its customers, for which Billion Tower would hold Defendant liable. Therein, Billion Tower stated as follows:

> As you were already aware, our customers will charge-back our account receivables, or cancel if we do not ship their orders complete and on-time. Therefore, you guaranteed us that all customers' orders that have the same ETA (Estimated Arrival Date) would be shipped together and in accordance with our requested delivery date. We do not want this to become a problem for the both of us. In order to have a clear understanding of your production time, we will like to request from you an updated Estimated Arrival Date for all of our orders.

26. On January 3, 2008, Defendant contacted Billion Tower and stated that the first shipment would be delivered by the end of the month. However, shortly thereafter, Defendant continued its pattern of systematic delay and obfuscation by asserting that the shipments would occur at the end of January for delivery to Billion Tower by mid-February.

27. On January 14, 2008, Billion Tower contacted Defendant therein asserting that Defendant's late deliveries would result in a two-percent (2%) per-day charge-back from Billion Tower's customers. Over the course of the next two months, Defendant's repeated delays and failed shipments continued unabated.

28. On March 5, 2008, Billion Tower contacted Defendant by email to explain that certain of its customers had already cancelled their orders due to the production deficiencies caused by Defendant. Therein, Billion Tower stated as follows:

> ...due to MDCT CO lateness to deliver to Billion Tower Int'l LLC, Billion Tower Int'l LLC has received cancellations on most of the orders from our customers...Please know that MDCT CO...[has] jeopardized our relationship with our customers, who have always trusted us on meeting deliveries and/or offering them other solutions to cover their need to have good on the floor.

29. As a direct and proximate result of Defendant's wrongful conduct as set forth herein, Billion Tower has seen its good name and business reputation tarnished and long-standing customers cancel orders both with respect to the merchandise handled by Defendant and future orders as well.

30. As a direct and proximate result of Defendant's wrongful conduct as set forth herein, Billion Tower has incurred damages relating to payments tendered to Defendant, which Defendant should forfeit due to its material breach of the contract between the Parties, in an amount to be determined at trial but not less than $5,000.00.

31. As a direct and proximate of Defendant's wrongful conduct as set forth herein, Billion Tower has forfeited profits, which were contemplated by the Parties pursuant to the terms of the contract agreed to by Defendant, in an amount to be determined at trial but not less than $250,000.00.

32. As a direct and proximate result of Defendant's wrongful conduct as set forth herein, Billion Tower has incurred additional damages related to increased charge-backs imposed by its existing retail customers due to Billion Tower's inability to deliver the merchandise handled by Defendant in a timely fashion so as to avoid mark-downs and other

retail discounts applied to merchandise previously sold by Billion Tower to those same customers in an amount to be determined at trial but believed to be in excess of $1,000,000.00.

### FIRST CLAIM FOR RELIEF
### (For Declaratory Judgment)

33. Billion Tower repeats and realleges each and every allegation set forth above as if set forth verbatim herein.

34. In light of Defendant's material misrepresentations and failure to produce and deliver the articles of clothing in the manner agreed upon with Billion Tower, Defendant has failed to satisfy its fundamental and material obligations pursuant to its contract with Billion Tower. As such, Billion Tower hereby requests judgment against Defendant declaring that Defendant materially breached its contract, which judgment is necessary by virtue of an actionable justiciable controversy as between the parties.

35. As a direct and proximate result of Defendant's material breach of its contract, Billion Tower is entitled to a judgment declaring Defendant to be in material breach of contract and awarding to Billion Tower all sums paid to Defendant as well as consequential damages, including foreseeable lost profits which were reasonably contemplated by the Parties, in an amount to be determined at trial but believed to be excess of $1,000,000.00.

### SECOND CLAIM FOR RELIEF
### (For Breach Of Contract)

36. Billion Tower repeats and realleges each and every allegation set forth above as if set forth verbatim herein.

37. As a direct and proximate result of Billion Tower's material failure to produce and deliver the articles of clothing in the manner agreed upon by the Parties, Defendant has failed to satisfy its fundamental and material obligations pursuant to its contract with Billion

Tower, thereby entitling Billion Tower to all sums paid to Defendant as well as consequential damages, including foreseeable lost profits which were reasonably contemplated by the Parties, in an amount to be determined at trial but believed to be in excess of $1,000,000.00.

### THIRD CLAIM FOR RELIEF
(For Fraud)

38. Billion Tower repeats and realleges each and every allegation set forth above as if set forth verbatim herein.

39. Defendant misrepresented to Billion Tower its ability to produce and deliver the articles of clothing, as well as its production capabilities in Vietnam, in order to induce Billion Tower to enter into the contract at issue. Defendant's representations were false when stated, material to Billion Tower's decision to contract with Defendant, and constituted an undisclosed intention by Defendant not to perform its contractual obligations in the manner agreed to with Billion Tower.

40. As a direct and proximate result of Defendant's fraud, Billion Tower is entitled to all sums paid to Defendant as well as consequential damages, including foreseeable lost profits which were reasonably contemplated by the Parties, in an amount to be determined at trial but believed to be excess of $1,000,000.00.

**WHEREFORE**, Billion Tower respectfully requests judgment against Defendant as follows:

(a) On the First Claim for Relief, an Order and Judgment in favor of Billion Tower and monetary damages in an amount to be determined at trial but believed to be in excess of $1,000,000.00, together with interest, attorneys' fees, costs, and other expenses; and

(b) On the Second Claim for Relief, an Order and Judgment in favor of Billion Tower and monetary damages in an amount to be determined at trial but believed to be in excess of $1,000,000.00, together with interest, attorneys' fees, costs, and other expenses;

(c) On the Third Claim for Relief, an Order and Judgment in favor of Billion Tower and monetary damages in an amount to be determined at trial but believed to be in excess of $1,000,000.00, together with interest, attorneys' fees, costs, and other expenses; and

(d) Such other and further relief as the Court may deem just and proper, including but not limited to, interest, attorneys' fees, costs, and other expenses.

Dated: May 14, 2008
White Plains, New York

**CUDDY & FEDER** LLP

Attorneys for Plaintiff Billion Tower
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
(914) 761-1300

By: _____
Joshua E. Kimerling (JK0053)
Brian P. Galligan (BG1669)